**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Reynaldo LOPEZ–PASTRANA,**
**Defendant–Appellant.**

**No. 00–10146.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 2001

Filed March 28, 2001

Michael K. Powell, Assistant Federal Public Defender, Reno, Nevada, for the defendant-appellant.

Craig Denney, Assistant United States Attorney, Reno, Nevada, for the plaintiff-appellee.

Before: SNEED, GRABER, and PAEZ, Circuit Judges.

SNEED, Circuit Judge:

Reynaldo Lopez–Pastrana appeals his sentence of eighty months imprisonment entered pursuant to a guilty plea to a single count of violating 8 U.S.C. § 1326 (Illegal Reentry). Lopez–Pastrana contends that the district court misapplied the Sentencing Guidelines and arrived at an improper criminal history score. We vacate the sentence and remand for re-sentencing on the grounds that Lopez–Pastrana's prior conviction for shoplifting should not have been counted in determining his criminal history category.

## I.

In 1993, Defendant was convicted of violating Reno Municipal Code § 8.10.045 (1998) (shoplifting) after he attempted to steal a wallet valued at $19 from a local department store. He was fined $200 and sentenced to sixteen hours of community service. The district court, in the instant proceeding, added one point to Lopez–Pastrana's criminal history score based on this conviction. This one point enhancement moved Lopez–Pastrana from criminal history Category V to Category VI. Consequently, his sentence was increased from a potential term of imprisonment of 70–87 months to a possible sentence of 77–96 months.

Lopez–Pastrana contends that under U.S.S.G. § 4A1.2(c)(1), the shoplifting conviction should have been excluded because shoplifting is "similar to" the listed offense of "insufficient funds check." We agree.[1]

---

1. Lopez–Pastrana also argues that his shoplifting offense was solely a local ordinance violation and therefore excluded under a separate provision of U.S.S.G. § 4A1.2(c)(1). We find this argument unpersuasive. Shoplifting

## II.

■ We review de novo a district court's determination that a prior conviction should be counted for criminal history purposes under the Sentencing Guidelines. *United States v. Sandoval,* 152 F.3d 1190, 1191 (9th Cir.1998).

Section 4A1.2(c) of the Guidelines provides in pertinent part:

(1) Sentences for the following prior offenses and *offenses similar to them* by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

. . .

insufficient funds check

. . .

■ Lopez–Pastrana's shoplifting conviction cannot be counted under either subsection (A) or subsection (B). Shoplifting is not similar to the instant offense of illegal reentry. Defendant's sentence for shoplifting consisted of sixteen hours of community service and a minimal fine. The issue squarely presented by this case, therefore, is whether a minor shoplifting offense is "similar to" any listed offense. As discussed below, we hold that it is similar to the offense of insufficient funds check.

## III.

First, we turn to the question of what is meant by "similar to" as used in U.S.S.G. § 4A1.2(c)(1). We then compare Lopez–Pastrana's shoplifting conviction to the enumerated offense of "insufficient funds check." Finally, we conclude that the two offenses are similar for the purpose of calculating a defendant's criminal history score.

### A. *"Similar To" as used in § 4A1.2(c)*

We have articulated two separate tests for determining whether a particular offense is "similar to" an offense listed in § 4A1.2(c). In *United States v. Martinez (Clyde),* 905 F.2d 251 (9th Cir.1990), we explained the rationale for excluding the listed offenses: they "offer no basis for predicting future significant criminal activity by the defendant; the conduct they involve is not uniformly criminalized, and when it is, the penalty is usually light." *Id.* at 253. Under the *Martinez (Clyde)* test, an offense must "offer a more substantial basis for predicting future criminal activity than do the minor" listed offenses before it may be counted towards a defendant's criminal history score. *United States v. Sandoval,* 152 F.3d at 1192. In essence, this test defines "similar to" on the basis of the underlying seriousness of the offense.[2]

In *United States v. Martinez (Carlos),* 69 F.3d 999 (9th Cir.1995), however, we chose not to apply the *Martinez (Clyde)* test and instead defined "similar to" with reference only to "whether the activity underlying [the prior offense] is similar to the activities underlying the listed offenses." *Martinez (Carlos),* 69 F.3d at 1000 (citing *Martinez (Clyde),* 905 F.2d at 255–256 (Wallace J., concurring)).[3]

■ Under either of these approaches, Lopez–Pastrana's conviction for shoplifting is similar to an insufficient funds check

is a criminal offense under Nevada law. N.R.S. § 205.0832. The fact that Nevada's state statute criminalizing theft does not track the exact language of the Reno Municipal Code creating the offense of shoplifting is of no legal significance. *See United States v. Hooks,* 65 F.3d 850, 856 (10th Cir.1995).

**2.** A similar test is utilized in the Second, Fifth and Seventh Circuits. *See United States v. Martinez–Santos,* 184 F.3d 196, 206 (2d Cir. 1999); *United States v. Hardeman,* 933 F.2d 278, 281 (5th Cir.1991); *United States v. Booker,* 71 F.3d 685, 689–690 (7th Cir.1995).

**3.** In practice, this approach is similar to the "elements" test used in the First, Third, Fourth, and Eleventh Circuits. *See United States v. Unger,* 915 F.2d 759, 763 (1st Cir. 1990); *United States v. Elmore,* 108 F.3d 23, 27 (3rd Cir.1997); *United States v. Harris,* 128 F.3d 850, 854–855 (4th Cir.1997); *United States v. Wilson,* 927 F.2d 1188 (11th Cir. 1991).

offense and therefore excluded under U.S.S.G. § 4A1.2(c)(1).[4]

### B. *Martinez (Clyde): "seriousness of the offense" test*

Applying the *Martinez (Clyde)* "seriousness of the offense" test, we hold that shoplifting is no more indicative of future criminal behavior than is passing a bad check. We disagree with the our dissenting colleague not only on the applicability of the *Martinez (Clyde)* test in this circumstance, but on the substance of the test as well. As noted by the dissent, application of *Martinez (Clyde)* as a "three part test" is unhelpful. Dissent at 1033–34. We do not believe this conclusion argues against using the test, but only against the dissent's characterization of how best to follow the holding of *Martinez (Clyde)*.

■ The core question under *Martinez (Clyde)* is whether the offense at issue "offer[s][a] basis for predicting future significant criminal activity." 905 F.2d at 253. If so, the prior offense "is significant for sentencing purposes" and should be included in a defendant's criminal history score. *Id.* at 254. Society's interest in punishing the offense is, of course, relevant to this question. Also relevant is the level of punishment imposed for a violation. Application of these two "factors" alone, however, does not conclude the inquiry. Other similarities between the prior offense and the listed offenses may also assist in assessing whether inclusion of the prior offense "would more likely distort than improve the process for ... determining an appropriate sentence." *Id.* at 253; *See United States v. Kemp,* 938 F.2d

1020, 1023 (9th Cir.1991) (*Martinez (Clyde)* analysis includes a comparison of the elements of the listed offense and the prior offense).

Restricting the *Martinez (Clyde)* analysis in the manner advocated by the dissent "limits unnecessarily the scope of the district court's inquiry." *United States v. Martinez–Santos,* 184 F.3d 196, 206 (2d Cir.1999) (similarity of listed and charged offense determined by comparison of all relevant factors). Instead, we take a

> common sense approach which relies on all possible factors of similarity, including a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

*United States v. Hardeman,* 933 F.2d 278, 281 (5th Cir.1991).

Both shoplifting and insufficient funds check are punished under the same provision of Nevada law. N.R.S. § 205.0832. The penalty for the two crimes is identical and depends entirely on the value of the property taken. N.R.S. § 205.0835. This indicates that the two offenses are perceived as equally serious. In the present case, the defendant received a minimal sentence of 16 hours of community service and a $200 fine. The actual punishment imposed, therefore, "places [the shoplifting conviction] in an arguably lesser category" than the listed offense of insufficient funds check.[5] *United States v. Almodovar,* 1996 WL 114930, *5 (E.D.Pa.1996).

---

4. For purposes of comparison, we use the federal definitions of the listed offenses. *United States v. Kemp,* 938 F.2d 1020, 1023–1024 (9th Cir.1991). Where there is no federal law on point, as is the case here, we may look to either state law or the Model Penal Code. *Id.* (comparing offense to disorderly conduct under Arizona law); *Martinez (Carlos),* 69 F.3d at 1001 (using Model Penal Code's definition of loitering).

5. In *United States v. Sandoval,* 152 F.3d 1190, 1192 (9th Cir.1998), we held that "a defen-

dant's prior sentence is unimportant under U.S.S.G. § 4A1.2(c)." This holding conflicts with *Martinez (Clyde),* which instructs us to consider the severity of the penalty for the prior offense when determining whether that conviction is similar to a listed offense. *Martinez (Clyde),* 905 F.2d at 253. Furthermore, consideration of the actual penalty imposed on a defendant is helpful in determining the seriousness of the crime. A fair application of the *Martinez (Clyde)* test, therefore, requires that the defendant's sentence be considered as a factor when ascertaining the

In addition, the two offenses share many of the same elements. There are four distinct ways to violate the Reno shoplifting ordinance. Each subsection of the ordinance defines shoplifting in a slightly different manner. For example, both concealing merchandise and altering the labels on merchandise are equally punishable as shoplifting if done with the intent to deprive the owner of the property. R.M.C. § 8.10.045(a)(2), (a)(3) (1998). Despite these minor variations, the essential elements of a shoplifting violation under the Reno Municipal Code are 1) willfully 2) taking possession of merchandise with 3) the intent to deprive the owner of the value of that property. Similarly, a person commits theft by passing a bad check under Nevada Law if he "knowingly ... draws or passes a check, and in exchange obtains property or services, if he knows that the check will not be paid when presented." N.R.S. § 205.0832.

Both offenses require willfulness. Both offenses require the conversion of the property of another. And both offenses require the specific intent to deprive the owner of the value of that property. The two offenses are similar. *See United States v. Sanders,* 205 F.3d 549, 553 (2nd Cir.2000) ("fare-beating" (i.e. entering the subway without paying) is "similar to" insufficient funds check because the two offenses share elements and are subject to equally lenient punishments).

### C. *Martinez (Carlos)*: "conduct" test

We reach the same conclusion after applying the *Martinez (Carlos)* "conduct" test to Appellant's shoplifting conviction. Unlike the *Martinez (Clyde)* test, the *Martinez (Carlos)* test does not require analysis of the defendant's prior offense to determine if it is predictive of future criminal behavior. Rather, the *Martinez (Carlos)* test focuses only on whether the conduct underlying the defendant's prior offense is "akin to the conduct underlying any of the listed offenses." *Sandoval,* 152 F.3d at 1192 (applying the *Martinez (Carlos)* test).

In *Martinez (Carlos)*, we applied the "conduct" test to the offense of vandalism. Vandalism, "by definition, involves the malicious defacement, destruction or damage to the property of another." *Martinez (Carlos)*, 69 F.3d at 1001. We held that vandalism was not "similar to" the offenses listed in U.S.S.G. § 4A1.2(c)(2) because vandalism is not a victimless crime and because vandalism involves malicious intent.[6] *Id.* at 1000–01.

Under the *Martinez (Carlos)* test, therefore, a prior offense is "similar to" a listed offense if the elements of the prior offense are similar to the elements necessary to prove one of the enumerated offenses.[7] This test overlaps, but is more narrow than, the *Martinez (Clyde)* test. Whereas similar elements may be considered under *Martinez (Clyde)* to ascertain whether the prior offense offers any "basis for predicting future significant criminal activity," such a comparison constitutes the entirety of the *Martinez (Carlos)* test. As indicated above, the conduct underlying Lopez–Pastrana's conviction for shoplifting is similar to the conduct that underlies an insuf-

---

similarity of the charged offense to a listed offense.

**6.** U.S.S.G. § 4A1.2(c)(2) is slightly different from § 4A1.2(c)(1). Insufficient funds check is not an enumerated offense under § 4A1.2(c)(2). Rather, § 4A1.2(c)(2) provides:

Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:
Hitchhiking

Juvenile status offenses and truancy
Loitering
Minor traffic infractions (e.g., speeding)
Public intoxication
Vagrancy

**7.** Although we refer to the *Martinez (Carlos)* test as a "conduct" test, the *Martinez (Carlos)* court made no effort to discern the actual conduct underlying the defendant's vandalism conviction. Rather, in *Martinez (Carlos)*, we compared the statutory definition of the prior offense to the listed offenses.

ficient funds check offense as defined by Nevada law.[8] *Compare* R.M.C. § 8.10.045 (1998) *with* N.R.S. 205.0832(9).

Our decision in *United States v. Sandoval* provides further support for today's order. In *Sandoval*, we applied the *Martinez (Carlos)* "conduct" test and held that petty theft was not similar to any of the offenses listed in § 4A1.2(c)(2). *Sandoval*, 152 F.3d at 1192. We based this holding on the fact that none of the offenses listed in § 4A1.2(c)(2) involve "taking another's property with the intent to deprive that person of the property." *Id.* This cannot be said of those offenses listed in § 4A1.2(c)(1), the provision at issue in this case. Insufficient funds check is a form of stealing. The implication of *Sandoval*, therefore, is that petty theft (like shoplifting) is similar to other minor theft offenses (like insufficient funds check). The district court erred in including this offense when calculating Lopez–Pastrana's criminal history score.

### D. Circuit Conflict

The dissent contends that our conclusion creates an inter-circuit conflict. Analysis of the cases cited by the dissent is sufficient to refute this claim. It is true that in *United States v. Hoelscher*, 914 F.2d 1527, 1537 (8th Cir.1990), the Eighth Circuit held that shoplifting is not similar to any of the offenses listed in § 4A1.2(c). *Hoelscher*, however, was decided before "insufficient funds check" was added to the list of excludable offenses. *See U.S. Sentencing Guidelines Manual*, App. C, Amendment 352 at 162–163 (1998). Both *United States v. Ziglin*, 964 F.2d 756, 758 (8th Cir.1992) and *United States v. Waller*, 218 F.3d 856, 857–58 (8th Cir.2000) followed *Hoelscher* without any analysis or comment on the underlying change in the

guideline provision. We decline to follow the lead of our sister circuit where the basis of its decision has been eroded through subsequent administrative action.

Furthermore, contrary to the dissent's suggestion, neither the Tenth nor the Fourth Circuits has held that shoplifting and insufficient funds check offenses are dissimilar under § 4A1.2(c). The court in *United States v. Hooks*, 65 F.3d 850 (10th Cir.1995) simply did not address the issue. The *Hooks* court held, as we hold today, that shoplifting is not excludable as a local ordinance violation. *See supra* n. 1. Nowhere does the *Hooks* decision address whether shoplifting is "similar to" an insufficient funds check offense. Likewise, in *United States v. Benjamin*, 110 F.3d 61, 1997 WL 165414 (4th Cir.1997) (unpublished disposition), the defendant failed to argue to the district court that his shoplifting conviction should be excluded from his criminal history calculation. Consequently, the appellate court reviewed his claim only for "plain error." Applying deferential "plain error" review (rather than the de novo approach applicable in the present case), the court held that the district court did not plainly err when it failed, sua sponte, to exclude Defendant's shoplifting conviction. *Benjamin*, 110 F.3d at 61, 1997 WL 165414 ("While [Appellant] has raised an arguable issue, we cannot say that the district court plainly erred ..."). Consequently, our holding does not conflict with decisions of either the Tenth or Fourth Circuits.[9]

### IV.

In conclusion, shoplifting and insufficient funds check offenses share similar elements, similar penalties, and similar underlying conduct. The offenses are there-

---

**8.** The dissent concludes that the "trespassory taking" necessary for shoplifting is "simply different" from the fraudulent taking underlying an "insufficient funds check" offense. Dissent at 1035–36. We do not believe this distinction overrides the considerable similarities between the offenses. We note, however, that to the extent a bad check offense contains

the additional element of deception, it is arguably more serious than the shoplifting offense at issue here.

**9.** To the extent that we have reached a different conclusion from the Eighth Circuit, we have done so based on our analysis of the updated guideline provision.

fore "similar" within the meaning of U.S.S.G. § 4A1.2(c)(1) and Lopez–Pastrana's shoplifting sentence should not have been included in his criminal history calculation. Excluding his shoplifting conviction, Lopez–Pastrana's proper sentencing range was 70–87 months, not 77–96 months. The sentence imposed by the district court is vacated and the case is remanded for re-sentencing.

REVERSED and REMANDED for re-sentencing.

GRABER, Circuit Judge, dissenting:

I respectfully dissent, because shoplifting is not "similar to" any of the excluded offenses listed in U.S.S.G. § 4A1.2(c)(1). That being so, the district court did not err in counting Defendant's prior conviction for shoplifting in his criminal-history score when sentencing him for the present crime of conviction. The majority's contrary conclusion illustrates the inconsistencies in our cases, fails to follow the most closely analogous Ninth Circuit precedent, and needlessly creates a conflict with at least one sister circuit.

I. *Misdemeanors generally are included in a criminal-history score.*

At heart, U.S.S.G. § 4A1.2(c) is a rule of inclusion, not exclusion. It provides: "Sentences for misdemeanor and petty offenses are counted, except as follows." What "follows" are two lists of excluded offenses, the (c)(1) list and the (c)(2) list.

The (c)(2) list is a list of crimes that "are of such minor significance to the goals of sentencing that inclusion would more likely distort than improve the process established by the guidelines for determining an appropriate sentence." *United States v. Martinez (Clyde),* 905 F.2d 251, 253 (9th Cir.1990) (citation omitted). Those crimes of "minor significance" are hitchhiking, loitering, juvenile status offenses and truancy, public intoxication, vagrancy, and minor traffic infractions. U.S.S.G. § 4A1.2(c)(2). Under (c)(2), those offenses "and offenses similar to them, by whatever name they are known, *are never counted*"

toward a defendant's criminal-history score. *Id.* (emphasis added).

The (c)(1) list, by contrast, is a list of crimes that *sometimes* are counted in a criminal-history score. Crimes on the (c)(1) list, "and offenses similar to them, by whatever name they are known," are excluded from a defendant's criminal-history score only if (a) the defendant received a light sentence and (b) the crime for which the defendant currently is being sentenced is not similar to the prior crime. U.S.S.G. § 4A1.2(c)(1). The crimes on the (c)(1) list include driving without a license, trespassing, non-support, prostitution, resisting arrest, contempt of court, and "[i]nsufficient funds check." The fact that the (c)(2) crimes never are counted, while the (c)(1) crimes sometimes are counted, reflects the Sentencing Commission's judgment that the (c)(1) crimes are somewhat more serious than the crimes of "minor significance" on the (c)(2) list.

II. *Under Nevada law, shoplifting is petit larceny.*

Defendant pleaded guilty to "shoplifting" under Reno Municipal Code § 8.10.045 (1998). At the time, shoplifting was a subset of petit larceny (essentially, petit larceny in a store), the elements of which were set out in Reno Municipal Code § 8.10.040 (1998). As relevant, § 8.10.045 made it unlawful for "[a]ny person willfully to take possession of any merchandise offered for sale by any store with the intention of converting the same to the use of such person without paying to the owner the value thereof." In 1999, the municipal code was amended; shoplifting merged into petit larceny and was eliminated as a separate crime.

As the majority notes, majority op. at 1026–27 n.1, it is of no consequence that Defendant was prosecuted under a local ordinance, because Defendant's crime also was a crime under state law. Under Nevada Revised Statute § 205.0832, the crime that Defendant committed is punishable as theft. Theft, in turn, is a "single offense embracing certain separate of-

fenses," including insufficient funds check *and* petit larceny. Nev.Rev.Stat. § 205.0833. A person commits petit larceny if he or she "[i]ntentionally steals, takes and carries away ... or drives away" property of another that is worth less than $250. Nev.Rev.Stat. § 205.240.

So Defendant's local conviction for shoplifting was equivalent to a state conviction for theft or, more specifically, for petit larceny. Like other forms of petit larceny, shoplifting required an attempted or completed trespassory taking of property, with the intent permanently to deprive the owner of that property. The acts covered by the municipal code are completely encompassed in the state law against larceny.

III. *This circuit has adopted two tests for determining when one crime is "similar to" another.*

Petit larceny (or theft, or shoplifting) is not among the crimes on either the (c)(1) or the (c)(2) list. But Defendant argues—and the majority concludes—that Defendant's conviction cannot be counted because it is "similar to" a crime on the (c)(1) list, "insufficient funds check."

The majority acknowledges, majority op. at 1027–28, that this court has two tests for determining whether one crime is "similar to" another under U.S.S.G. § 4A1.2(c): the *Martinez (Clyde)* test and the *Martinez (Carlos)* [1] test. The majority then applies both tests and concludes that, under either, petit larceny is "similar to" insufficient funds check. I disagree with the majority's application of the two Martinez tests; but before explaining my disagreement, I wish to explain why the *Mar-*

tinez *(Clyde)* test is neither useful nor appropriate in cases like this one.

This case involves application of U.S.S.G. § 4A1.2(c)(1). But in *Martinez (Clyde)*, this court was applying U.S.S.G. § 4A1.2(c)(2). As noted, (c)(2) lists the least significant offenses of which a defendant can be convicted—offenses such as minor traffic infractions. The question in *Martinez (Clyde)* was how to decide whether the offense at issue, public indecency (which was *not* on that list), was nevertheless of "such minor significance" that it *never* should be counted for purposes of sentencing.

In making that determination, the *Martinez (Clyde)* court took a "categorical," rather than a "crime-by-crime," approach. By that I mean that the court *did not* pick a particular crime from the (c)(2) list and then determine whether public indecency was similar to it. Rather, the court described the *general characteristics* of the "insignificant" offenses on the (c)(2) list as a whole and then set about to determine whether public indecency was an offense that shared those general characteristics. The court identified three such characteristics, asking whether: (1) the offense "offer[s] [a] basis for predicting future significant criminal activity by the defendant"; (2) the offense involves conduct that "is not uniformly criminalized, and when it is, the penalty is usually light"; and (3) "[s]ociety has a substantial interest in punishing such conduct ... and in discouraging its repetition." *Martinez (Clyde)*, 905 F.2d at 253–54; *see also United States v. Sandoval*, 152 F.3d 1190, 1192 (9th Cir.1998) (listing elements).[2] In particular, the court fo-

---

**1.** *United States v. Martinez (Carlos)*, 69 F.3d 999 (9th Cir.1995).

**2.** The majority insists that my reading of Martinez (Clyde) is unduly restrictive. Majority op. at 1028. My description of the three-part test, however, mirrors the numbered description of the "three-factor test" of *Martinez (Clyde)* that this court recently gave in *Sandoval*, 152 F.3d at 1192.

The majority cites *United States v. Kemp*, 938 F.2d 1020, 1023 (9th Cir.1991), for the proposition that the *"Martinez (Clyde)* analysis includes a comparison of the elements of the

listed offense and the prior offense," which would be a *fourth* factor and would make this court's test similar to the Fifth Circuit's formulation in *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir.1991). Majority op. at 1028. Assuming that *Kemp* contains such a suggestion, the difference between *Kemp* and *Sandoval* only highlights the disarray in our precedents. Now we apparently have three tests, rather than two: *Martinez (Clyde)* as interpreted and applied in *Sandoval; Martinez (Clyde)* as interpreted and applied in this case and, possibly, in *Kemp;* and *Martinez*

cused on the fact that the offenses on the (c)(2) list are not universally regarded as culpable: "Consideration of convictions for such conduct in determining sentences would be inimical to the realization of the goal of uniformity in sentencing since the sentencing calculation under the guidelines would vary with the jurisdiction in which a person who engaged in such conduct resided." *Martinez (Clyde)*, 905 F.2d at 253.

The court then addressed the crime of public indecency in the light of those general characteristics and concluded that it was not "similar to" the crimes on the (c)(2) list. *Id.* at 254. The court focused on the fact that public indecency is generally regarded as culpable, as evidenced by the fact that it is treated as a criminal offense in every American jurisdiction. *Id.* "Because public indecency is universally regarded as culpable," the court concluded, "conviction of such an offense is relevant to the likelihood the offender will engage in criminal conduct in the future and is significant for sentencing purposes." *Id.*

Like *Martinez (Clyde)*, *United States v. Martinez (Carlos)*, 69 F.3d 999 (9th Cir. 1995), is a case that arose under (c)(2). But instead of following the categorical "general characteristics" approach espoused in *Martinez (Clyde)*, the *Martinez (Carlos)* court looked at the specific conduct underlying the defendant's prior offense, vandalism. *Id.* at 1000. The court reasoned: "The inquiry into whether vandalism is 'similar' to a section 4A1.2(c)(2) listed offense must focus on whether the activity underlying vandalism is similar to the activities underlying the listed offenses." *Id.* The court then considered whether the "activity underlying" certain offenses on the (c)(2) list was similar to the conduct underlying vandalism and conclud-

ed that it was not. *Id.* at 1000–01. Accordingly, the court held that none of the offenses on the (c)(2) list was "similar to" vandalism. In explaining its refusal to follow the categorical *Martinez (Clyde)* test, the court stated that application of that test "would lead to the same result, but it would do so without looking at *the real question before this court—the similarity of the prior offense of vandalism to the listed excluded offenses.*" *Id.* at 1001 (emphasis added).

The *Martinez (Clyde)* test and the *Martinez (Carlos)* test answer related but different questions. The *Martinez (Clyde)* test answers this question: "As a general matter, is this crime the *kind of crime* that the Sentencing Commission placed on the (c)(2) list?" The *Martinez (Carlos)* test answers this question: "Is this crime similar to any *particular crime* on the (c)(2) list?"

IV. *In the context of § 4A1.2(c)(1), only the Martinez (Carlos) test should apply.*

Our question in this case is the *Martinez (Carlos)* question, albeit in the context of (c)(1). We must answer, not the question whether petit larceny is like the crimes on the (c)(1) list as a general matter but, rather, the question whether petit larceny is like a specific crime on the (c)(1) list, insufficient funds check.

The *Martinez (Clyde)* test is ill-suited to answering that specific question, *particularly* when it is applied, as here, to a case under (c)(1).[3] A review of the three elements of the test illustrates why. First, Martinez (Clyde) instructs us to ask whether a crime is uniformly considered to be culpable. 905 F.2d at 253. The offenses on the (c)(2) list are not criminalized

*(Carlos).* At least one other circuit has criticized the Ninth Circuit's law with respect to U.S.S.G. § 4A1.2(c) as "indeterminate" and as creating "confusion." *United States v. Harris*, 128 F.3d 850, 854 (4th Cir.1997).

**3.** This court has attempted, only once, to apply the *Martinez (Clyde)* test in the context of

(c)(1). *Kemp*, 938 F.2d 1020. The court concluded that it was "practically impossible" to apply the test in the circumstances of the case and, accordingly, "carve[d] out an exception" to it by looking at the underlying conduct involved in the prior crime. *Id.* at 1023.

in all jurisdictions. Thus, an offense that is considered a crime in some places but not in others is, in that respect, similar to the crimes on the (c)(2) list. It would be unfair, and contrary to the goal of national uniformity, *ever* to count such an offense in a criminal-history score.

But there is no suggestion that the more significant crimes on the (c)(1) list are not uniformly considered to be culpable. Certainly the offenses at issue here are criminalized, in one form or another, in every jurisdiction. *See* Model Penal Code (1980): § 223.2 (theft by unlawful taking); § 224.5 (bad checks). In that sense, I suppose that the crimes *are* similar; both are *uniformly* considered to be culpable. But it is nonsensical to conclude that such a similarity is a reason *not* to count a crime for criminal-history purposes. So the first question from *Martinez (Clyde)* is simply unhelpful in cases that address the (c)(1) crimes, which are uniformly regarded to be culpable to some degree.

Second, *Martinez (Clyde)* instructs us to consider whether a crime offers a "basis for predicting future significant criminal activity by the defendant." 905 F.2d at 253. Again, that question makes sense in a categorical, *Martinez (Clyde)* inquiry, in which a court is trying to determine whether a crime is in the class of crimes that are so minor that they never should be counted. But here, we are trying to determine whether a specific crime, petit larceny, is like another specific crime, insufficient funds check. How could our speculation about whether thieves are likely to commit crimes again help us answer that question? If we conclude that they are, does that make them more "similar to" people who pass bad checks, or less so? Is insufficient funds check a crime that is characterized by a likelihood of recidivism? How are we to know that? The majority implicitly acknowledges that this step in the *Martinez (Clyde)* test is impossible to apply here by listing the step, majority op. at 1028, but never discussing it.

Third, *Martinez (Clyde)* instructs us to consider whether "[s]ociety has a substan-

tial interest in punishing such conduct . . . and in discouraging its repetition." 905 F.2d at 254. As with the other parts of the test, this question is difficult to apply outside the context of a categorical, *Martinez (Clyde)* inquiry. Every jurisdiction punishes petit larceny and insufficient funds check (just as, with minor exceptions, they punish the rest of the crimes on the (c)(1) list). So in that sense the two crimes are "similar." But again, why should the fact that both crimes are condemned everywhere argue *against* counting petit larceny for purposes of criminal history?

The majority also considers another question in its analysis under *Martinez (Clyde)*—Defendant's sentence. As the majority notes, there is some disagreement in this circuit about whether that is an appropriate consideration under (c)(2). Majority op. at 1029 n.5. But there should be no disagreement that such a consideration is inappropriate under (c)(1). That is because (c)(1), unlike (c)(2), *already contains within it a sentencing consideration:* the threshold requirement that a prior offense may be excluded only if the term of punishment actually imposed was less than 30 days in prison or one year's probation. In other words, (c)(1) already considers sentencing; even to reach the question whether a crime is "similar to" a crime on the (c)(1) list, a court must *first* satisfy itself that the sentencing criteria are met. Accordingly, it is unnecessary under (c)(1) to examine whether a defendant received a light sentence in determining whether two crimes are "similar." The answer must always be "yes." *United States v. Harris,* 128 F.3d 850, 855 (4th Cir.1997).

In sum, the *Martinez (Clyde)* test is inappropriate and unhelpful in this case. In cases under (c)(1), where the inquiry is whether a specific crime is similar to another specific crime, the better approach is that taken in *Martinez (Carlos)*. A court simply should look at the two crimes that are alleged to be similar and "focus on whether the activity underlying [one] is

similar to the activit[y] underlying the [other]." *Martinez (Carlos),* 69 F.3d at 1000.

## V. *Under either test, these crimes are not "similar."*

### A. *The Martinez (Carlos) test*

The majority concludes that Defendant's theft is similar to insufficient funds check under the *Martinez (Carlos)* test, largely because the crimes have several overlapping elements. I disagree. As noted, the offense of "shoplifting" under the 1998 Reno Municipal Code, and the offense of "petit larceny" under Nevada state law, require a trespassory taking of property. It is that element that differentiates larceny from fraud-based offenses like passing a bad check. Neither insufficient funds check nor any other offense that is excluded under U.S.S.G. § 4A1(2)(c) pertains to a trespassory taking of the property of another.

As support for its contrary conclusion, the majority cites *United States v. Sandoval.* Majority op. at 1030. In *Sandoval,* this court held that petty theft was *not* similar to any of the offenses on the (c)(2) list, primarily because none of the offenses on the (c)(2) list requires proof of criminal intent or involves stealing. 152 F.3d at 1192. From this, the majority concludes that petit larceny and insufficient funds check must be similar, because both require criminal intent and stealing.

*Sandoval* is this court's only case addressing the question whether a minor theft crime like petit larceny is excludable under U.S.S.G. § 4A1.2(c). The *Sandoval* court concluded that the crime was *not* excludable. 152 F.3d at 1192. The court's holding, therefore, would appear to support the argument that petit larceny should not be excluded in this case. But the majority cites it for the opposite proposition. To be sure, *Sandoval* may be distinguished on the ground that it is a(c)(2) case, not a(c)(1) case like this one. But so are the other cases on which the majority bases its holding, *Martinez (Clyde)* and *Martinez (Carlos).*

In any event, *Sandoval* does not support the majority's holding. *Sandoval* simply applies *Martinez (Carlos)* and concludes that, if there is some significant difference between the conduct underlying a prior misdemeanor and the conduct underlying a listed offense, then the two crimes are not similar. It is true that petit larceny is not different from insufficient funds check in all respects. Petit larceny and insufficient funds check *both* differ from the crimes listed in (c)(2) for the reasons discussed above in Part IV. But petit larceny and insufficient funds check nevertheless differ from each other, and significantly so; and *Martinez (Carlos)* requires no more. Petit larceny is like insufficient funds check in that both involve stealing, but it is different in that it involves a trespassory taking, or "physical possession or control without consent or authority." Model Penal Code § 223.2, at 165 (1980). That sort of physical taking without consent is simply different from the act of obtaining property by fraud. This additional element distinguishes the activity underlying the two crimes for purposes of the *Martinez (Carlos)* test.

### B. *The Martinez (Clyde) test*

Nor are these offenses similar under the *Martinez (Clyde)* test, even assuming that it applies. As noted, petit larceny is criminalized universally. *Martinez (Clyde),* 905 F.2d at 253. "Society has a substantial interest in punishing such conduct … and in discouraging its repetition." *Id.* at 254. And, under the reasoning of *Martinez (Clyde),* petit larceny is predictive of future criminal activity. In *Martinez (Clyde),* the court addressed this step through reference to the universal culpability of the offense in question: "Because public indecency is universally regarded as culpable, conviction of such an offense is relevant to the likelihood the offender will engage in criminal conduct in the future and is significant for sentencing purposes." *Id.* So too here.

The majority also addresses the elements of the offenses in its discussion of the *Martinez (Clyde)* test. Majority op. at 1028–29. Assuming that this properly is part of the *Martinez (Clyde)* inquiry, *but see ante* note 2, I do not agree that the elements of these offenses support the conclusion that petit larceny should be excluded under (c)(1). Although the offenses have some elements in common, they are crucially different, as discussed above.

## VI. *The majority creates an inter-circuit conflict.*

Every circuit to have considered this question has held that petit larceny (or petty theft, or shoplifting) is not "similar to" to any offense on the (c)(1) list, including insufficient funds check. *United States v. Waller*, 218 F.3d 856, 857–58 (8th Cir.2000); *United States v. Hooks*, 65 F.3d 850, 855 (10th Cir.1995); *United States v. Ziglin*, 964 F.2d 756, 758 (8th Cir.1992); *United States v. Hoelscher*, 914 F.2d 1527, 1537 (8th Cir.1990); *see also United States v. Benjamin*, 110 F.3d 61, 1997 WL 165414 (4th Cir.1997) (unpublished disposition); *United States v. Mazanetz*, 61 F.3d 906, 1995 WL 431404 (7th Cir.1995) (unpublished disposition).[4] With this opinion, we become the first circuit court to hold otherwise.

The majority asserts that its creation of a circuit split may not last long, because the Eighth Circuit might see fit to reconsider its binding precedent now that "insufficient funds check" is on the (c)(1) list. Majority op. at 1030. A change of course seems unlikely; the Eighth Circuit specifically has rejected a defendant's argument "that he should not have received one criminal history point for a prior state petty-theft conviction, because it is similar to the offense of '[i]nsufficient funds check,' which is included on an exclusionary list in U.S. Sentencing Guidelines Manual § 4A1.2(c)(1) (1997)." *United States v. Tauer*, 141 F.3d 1171, 1998 WL 85348, at *1 (8th Cir.1998) (unpublished disposition).[5] *Mazanetz*, likewise, rejected the very argument that Defendant makes here. *See also United States v. Dershem*, 818 F.Supp. 785, 791 (M.D.Pa.1993) (holding that "retail theft" is not excludable under U.S.S.G. § 4A1.2(c)(1), in response to the defendant's argument that it is analogous to "insufficient funds check"). The majority also downplays the creation of a circuit split by pointing out distinguishing features of some the cases cited above. Majority op. at 1030–31.

But the fact remains that, after this opinion, the Ninth Circuit will stand alone, and sentencing disparities will occur for the first time on this basis. In this circuit, and this circuit only, defendants' prior convictions for petty theft will be excluded under U.S.S.G. § 4A1.2(c). It is striking that the case on which the majority most heavily relies, *Martinez (Clyde)*, based *its* holding on the "realization of the goal of uniformity in sentencing" and on the necessity of avoiding a situation in which "sentence calculation[s] under the guidelines would vary with the jurisdiction in which a person who engaged in such conduct resided." 905 F.2d at 253.

## VII. *The majority's result is contrary to the likely intent of the Sentencing Commission.*

I disagree with the majority for one final reason: its result simply does not make

---

4.  The Fourth Circuit allows citation of unpublished opinions if "there is no published opinion that would serve as well." United States Court of Appeals for the Fourth Circuit, Rule 36(c). The Seventh Circuit does not. United States Court of Appeals for the Seventh Circuit, Rule 53(2)(iv). I do not cite these dispositions for their precedential or persuasive value but, rather, simply to note their existence.

5.  In the Eighth Circuit, an unpublished opinion may be cited if it "has persuasive value on a material issue and no published opinion of this or another court would serve as well." United States Court of Appeals for the Eighth Circuit, Rule 28A(i); see also *Anastasoff v. United States*, 235 F.3d 1054, 1056 (8th Cir. 2000) (stating that the constitutionality of the provision in Rule 28A(i) that unpublished opinions have no precedential effect "remains an open question" in that circuit).

sense. Larceny (or theft) is by far the most frequently committed crime that the FBI lists in its crime index. *See* 1999 FBI Crime Index at Figure 2.3. In 1999, larceny and theft made up almost 60% of the total crimes reported in the crime index. *Id.* In that year alone, the FBI reported nearly 7 million larcenies and thefts. Id. § II.

Petit larceny (or shoplifting, or petty theft) assuredly is one of the most common, and best known, of misdemeanors. The majority concludes that the Sentencing Commission intended this crime to be excluded from criminal-history scores under § 4A1.2(c)(1). If so, then why did not the Commission simply put this crime on the (c)(1) list? There are 15 crimes on the list, including such less obvious (and less common) misdemeanors as hindering a police officer and fish and game violations. Is it really likely that the Commission intended to list petit larceny—perhaps the prototypical misdemeanor—but simply neglected to do so, or thought that it was *unnecessary* because petit larceny is so clearly "similar to" insufficient funds check?

Of course not. If the Commission had wanted to list this offense, it would have done so. But it did not.

VIII. *Conclusion*

For the reasons stated, I disagree with the majority's conclusion that petit larceny is "similar to" insufficient funds check for purposes of U.S.S.G. § 4A1.2(c)(1). I therefore dissent.

