TALLMAN, Circuit Judge.
Misael Hernandez-Hernandez appeals his sentence following a guilty plea conviction for illegal reentry in violation of 8 U.S.C. § 1326. He challenges a 16-level enhancement for reentry after deportation pursuant to a “crime of violence,” contending that (1) the enhancement violates Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the government did not charge him with being an aggravated felon, and (2) his prior felony convictions do not qualify as “crimes of violence” under U.S.S.G. § 2L1.2(b)(1)(A)(ii). He also challenges a one-point criminal history score increase *1215 for a misdemeanor conviction for threats to do harm, contending that this prior conviction should have been excluded under U.S.S.G. § 4A1.2(c)(l). We previously-affirmed Hernandez-Hernandez’s conviction and sentence in United States v. Hernandez-Hemandez, 387 F.3d 799 (9th Cir. 2004). The Supreme Court vacated that judgment and remanded for further consideration in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Ramos-Birrueta v. United States, — U.S. -, 125 S.Ct. 1427, 161 L.Ed.2d 185 (2005).
We again hold that the district court properly counted the prior convictions, and so affirm all grounds on which the sentence was based. However, we grant limited remand to the district court pursuant to United States v. Ameline, 409 F.3d 1073 (9th Cir.2005) (en banc).
I
On July 23, 2002, the grand jury charged Hernandez-Hernandez with one count of illegal re-entry after deportation in violation of 8 U.S.C. § 1326. The indictment alleged that he had been deported on or about July 9, 1997, and that he was found thereafter in the United States without permission on June 30, 2002. The indictment did not allege that his deportation followed a conviction for an aggravated felony. He pled guilty to the indictment.
The presentence report (“PSR”) recommended a 16-level enhancement because he previously had been deported subsequent to several aggravated felony convictions, including a 1987 California conviction for infliction of corporal injury upon a spouse, and a 1993 California conviction for two counts of false imprisonment. The PSR also recommended assessing one criminal history point for a 2002 Washington municipal court conviction for threats to do harm.[1] Hernandez-Hernandez objected to the PSR. He asserted that the convictions for infliction of corporal injury upon a spouse and for false imprisonment did not merit a 16-level enhancement, and his conviction for threats to do harm did not warrant a criminal history point because it should have been excluded under U.S.S.G. § 4A1.2(c) as being similar to the offense of disorderly conduct.
• The district court denied Hernandez-Hernandez’s objections. He had filed a motion to set aside the false imprisonment charges, called a “995 Motion” in California courts, before pleading guilty. During the change of plea hearing for the false imprisonment charges, defense counsel stated that the parties stipulated to the contents of the 995 Motion as the factual basis for the plea.[2] In this case, the dis *1216 trict court relied on that stipulated factual basis to find that the false imprisonment conviction supported the 16-level enhancement. The court found that Hernandez-Hernandez clearly committed the crimes underlying the conviction through the use of force or violence.[3] The distinct court assessed one point for his conviction for threats to do harm because it found that the offense “is more like harassment than it is [like] disorderly conduct.”
The resulting calculation placed Hernandez-Hernandez in Criminal History Category IV with an adjusted Offense Level of 21, producing a sentencing range of 57-71 months. The district court sentenced him to 65 months of imprisonment.
II
Hernandez-Hernandez contends that the district court improperly enhanced his sentence for prior aggravated felony convictions that the government did not charge in the indictment, submit to a jury, and prove beyond a reasonable doubt. This argument is foreclosed by our decision in United States v. Pacheco-Zepeda, 234 F.3d 411, 415 (9th Cir.2000) (construing Apprendi to mean that the government is not required “to include [an *1217 alien’s] prior aggravated felony convictions in the indictment, submit them to a jury, or prove them beyond a reasonable doubt”), and United States v. Quintana-Quintana, 383 F.3d 1052, 1052-53 (9th Cir. 2004).
Ill
Hernandez-Hernandez challenges the district court’s imposition of the 16-level enhancement, contending that he has not been convicted of a prior felony “crime of violence” under U.S.S.G. § 2L1.2(b)(l)(A)(ii). He argues that the district court’s reliance on the stipulated 995 Motion to determine whether the false imprisonment conviction constitutes a “crime of violence” violates the prohibition set forth in Taylor v. United States, 495 U.S. 575, 601-02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), that sentencing courts may not inquire into the facts underlying a prior conviction to determine whether it counts as a predicate offense. We review de novo a district court’s determination that a prior conviction merits an enhancement to the base offense level. United States v. Riverar-Sanchez, 247 F.3d 905, 907 (9th Cir.2001) (en banc).[4]
Hernandez-Hernandez is subject to a 16-level increase in his base offense level if he previously was deported pursuant to a felony conviction for a crime of violence, defined as “any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.” § 2L1.2(b)(l)(A)(ii), cmt. n. lB(iii). Taylor applies to the predicate offense determination under § 2L1.2. United States v. Pimentel-Flores, 339 F.3d 959, 967-68 (9th Cir.2003).
The California false imprisonment statute reaches both conduct that constitutes a crime of violence and conduct that does not; therefore, we use the modified categorical approach to examine “documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes[,] such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings.” Rivera-Sanchez, 247 F.3d at 908 (alteration in original) (quoting United States v. Casarez-Bravo, 181 F.3d 1074, 1077 (9th Cir.1999)); see United States v. Hemandez-Castellanos, 287 F.3d 876, 881 (9th Cir.2002).[5]
We must decide whether the district court properly followed the modified categorical approach when it relied on the facts contained in the stipulated 995 Motion to determine that Hernandez-Hernandez committed the offense of false imprisonment through the use of violence. We allow sentencing courts to consider signed plea agreements and plea transcripts in conjunction with other documents when making this determination. See United States v. Hernandez-Valdovinos, 352 F.3d 1243, 1248 (9th Cir.2003) (allowing the dis *1218 trict court to rely on the indictment, plea agreement, minutes from the change of plea hearing, and judgment); United States v. Bonat, 106 F.3d 1472, 1476-77 (9th Cir.1997) (allowing the district court to consider the information, sentence of imprisonment, and the plea transcript); United States v. Sweeten, 933 F.2d 765, 768-70 (9th Cir.1991) (allowing the district court to consider the indictment, signed plea agreement, and judgment). The Supreme Court has confirmed that in plea cases, the court may rely upon “the statement of factual basis for the charge,” required under Federal Rule of Criminal Procedure 11(a)(3), as “shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.” Shepard v. United States, 544 U.S. 13,-, 125 S.Ct. 1254, 1259-60,161 L.Ed.2d 205 (2005).
In the stipulated 995 Motion,[6] Hernandez-Hernandez admitted to a particular set of facts that clearly involve violence and the use of force. He positioned his truck to block the path of his victims’ van, attempted to pry open the van’s door, grabbed one of the victims and attempted to extract her forcibly from the van, and then yanked the wires under the dashboard to. disable the victims’ vehicle. Finally, he threatened to kill the occupants if they refused to turn over one of the women in the van. This stipulation does not describe activities of fraud or deceit; it describes acts of violence. The conclusion is inescapable that, by stipulating to this testimony as the factual basis for his guilty plea, Hernandez-Hernandez necessarily was convicted of a crime committed by violent means, and not by the other methods set forth in the charging document and statute.
We see no appreciable difference between allowing the district court to rely on the stipulated 995 Motion which served as the factual basis for the plea and allowing prior sentencing courts to rely on a plea agreement or the transcript of a plea colloquy. Indeed, this document serves as the “findings of fact adopted by the defendant upon entering the plea,” which is part of the judicial record on which the Supreme Court agrees later courts may rely. See id. at 1260. Congress did not intend to require sentencing courts to engage in “an elaborate factfinding process regarding the defendant’s prior offenses.” Taylor, 495 U.S. at 601, 110 S.Ct. 2143. Here, because Hernandez-Hernandez stipulated to a document which served as the factual basis for his guilty plea, the sentencing court was not required to engage in any further factfinding endeavor.[7] The court did no more than we have allowed in our prior cases; it relied on readily available facts expressly stipulated by both sides and clearly fitting within the statutory definition of a crime of violence. The district court did not violate Taylor.
Our colleague in dissent criticizes the district court’s reliance on the stipulation. The dissent argues that the defense counsel’s stipulation in open court to the 995 *1219 Motion does not demonstrate that Hernandez-Hernandez necessarily admitted to all the facts in the 995 Motion. The dissent notes that “[a]t his change of plea hearing, Hernandez[-Hernandez] never personally acknowledged the truth of the allegations set out in footnote 2.... The judge never personally addressed him to ask whether those things were true. Nor did the judge ask him what he had done.” Relying on the fact that “Hernandez[-Hernandez] never acknowledged that he agreed that these facts had taken place, or even that he had ever seen his lawyer’s motion papers,” the dissent concludes that the exchange between the attorneys and the court which resulted in the stipulation does not “unequivocally establish[]” these facts as required for the modified categorical approach.
There is no authority to support the proposition that when Hernandez-Hernandez’s attorney stipulated to the factual basis supporting the plea agreement the defendant was not bound by the facts contained in that stipulation. In fact, we have repeatedly held that criminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority. See United States v. Ferreboeuf, 632 F.2d 832, 836 (9th Cir.1980) (holding that “when a stipulation to a crucial fact is entered into the record in open court in the presence of the defendant, and is agreed to by defendant’s acknowledged counsel, the trial court may reasonably assume that the defendant is aware of the content of the stipulation and agrees to it through his or her attorney”); see also United States v. Bentson, 947 F.2d 1353, 1356 (9th Cir. 1991) (finding that defendant was bound by his attorney’s admission during closing argument); Rodriguez-Gonzalez v. INS, 640 F.2d 1139, 1141-42 (9th Cir.1981) (holding that attorney’s admission to an element of the offense in the petitioners’ presence at a deportation hearing was binding on the petitioners).[8] Consistent with this approach, we have recently approved of reliance on the prosecutor’s statement of the factual basis of the charge where defense counsel did not object to the factual statement. See United States v. Smith, 390 F.3d 661, 666 (9th Cir.2004), as amended by 405 F.3d 726 (9th Cir.2005) (concluding that the defendant conceded the facts through his counsel). The Smith court held that “the district court may rely on the undisputed factual basis as stated at the plea hearing to support” a sentencing enhancement. See id. at 665-66 (citing United States v. Palmer, 68 F.3d 52, 53 (2d Cir.1995)). In the case at bar, the district court’s reliance on the 995 Motion is equally appropriate; the defense counsel expressly stipulated to the factual basis of the plea and that is sufficient to constitute “findings of fact adopted by the defendant.” Shepard, 125 S.Ct. at 1260.
The purpose of the Taylor approach is “to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime, even if the statute defining the crime is overly inclusive.” Hernandez-Valdovinos, 352 *1220 F.3d at 1247 (quoting United States v. Coronor-Sanchez, 291 F.3d 1201, 1211 (9th Cir.2002) (en banc)). The district court did exactly as we have instructed. It looked to the statute of conviction and to judicially noticeable facts, the stipulated factual basis, which “unequivocally establish!]” that Hernandez-Hernandez’s prior conviction involved the use of force and violence. The district court properly imposed a 16-level enhancement for a prior aggravated felony conviction.
IV
Hernandez-Hernandez- challenges the inclusion of one point in his criminal history score, contending that his 2002 conviction for threats to do harm, a municipal misdemeanor conviction, should have been excluded under U.S.S.G. § 4A1.2(c)(l). We review de novo a district court’s inclusion of a prior conviction for criminal history purposes. United States v. Lopez-Pastrana, 244 F.3d 1025, 1027 (9th Cir.2001).
Prior sentences for misdemeanors are generally included in a defendant’s criminal history score, subject to certain exceptions:
(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense [illegal reentry]:
Disorderly Conduct
U.S.S.G. § 4A1.2(c). We must decide whether Hernandez-Hernandez’s prior misdemeanor sentence was a term of imprisonment of at least thirty days, and whether the conviction for “threats to do harm” is similar to “disorderly conduct.” The conviction for threats to do harm may not be counted under subsection (B) because a conviction for threats to do harm is not similar to the instant offense of illegal reentry.
A
Section 4A1.2(e)(l)(A) of the Sentencing Guidelines instructs that a sentence may be counted only if the sentence was for a term of imprisonment of at least thirty days. A “sentence of imprisonment” is defined as a sentence of incarceration and refers to the maximum sentence imposed, rather than the time actually served. § 4A1.2(b)(l). If part of the sentence of imprisonment is suspended, “sentence of imprisonment” refers “only to the portion that was not suspended.” § 4A1.2(b)(2). Hernandez-Hernandez received a 90-day sentence, with 87 days suspended for this misdemeanor conviction. The sentence imposed for his conviction for threats to do harm does not count as a prior sentence under § 4A1.2(c)(l)(A) because his sentence was for only three days. See § 4A1.2(b)(2).
We recognize that this result may appear to be at odds with prior precedent. See United States v. Williams, 291 F.3d 1180, 1195 (9th Cir.2002) (finding that the defendant’s six-month suspended sentence must be counted as a prior sentence despite the exclusion in § 4A1.2(c)(l)). Williams is distinguishable because that defendant’s sentence was “totally suspended” and § 4A1.2(b)(2) did not apply. Id. Where, as here, the sentence was partially suspended, § 4A1.2(b)(2) prevents the three-day “sentence of imprisonment” from counting as a prior sentence.[9]
*1221 B
Our determination that Hernandez-Hernandez’s prior sentence did not exceed thirty days does not end our inquiry. We must next ask whether his conviction for threats to do harm is similar to the listed offense of disorderly conduct.[10]
Under the “conduct” test, Hernandez-Hernandez’s prior conviction is similar to the listed offense if the elements of the municipal threats to do harm ordinance are similar to the elements necessary to prove the listed offense of disorderly conduct. See Lopez-Pastrana, 244 F.3d at 1027; Martinez (Carlos), 69 F.3d at 1000-01.
The Toppenish, Washington, city ordinance reads:
It is unlawful for any person to communicate, directly or indirectly, the intent to cause bodily injury to another person or the intent to cause physical damage to the property of another. Every person convicted of a violation of the provision of this section shall be guilty of threats to do harm, a misdemeanor.
Toppenish Mun.Code § 9.06.020.
In contrast, the Model Penal Code (“MPC”)[11] defines disorderly conduct as:
(1) Offense Defined. A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(a) engages in fighting or threatening, or in violent or tumultuous behavior; or
(b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or
(c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
“Public” means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood.
(2) Grading. An offense under this section is a petty misdemeanor if the actor’s purpose is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.
Model Penal Code § 250.2.
Threats to do harm and disorderly conduct do not contain the same elements or *1222 the same underlying conduct. To be guilty of threats to do harm, a person must communicate his intent to cause bodily injury to another person or the intent to cause physical damage to another’s property. In contrast, disorderly conduct requires that a person, with the purpose of causing a public inconvenience, annoyance, or alarm, simply engage in fighting or use abusive language. Although they both penalize the use of abusive language, the offense of threats to do harm requires that the threats communicated contain a specific intent to cause bodily injury or physical damage. Thus, the conduct is directed at a particular victim or object, showing a willingness to harm that victim. In contrast, disorderly conduct is essentially an unfocused crime; there is no requirement that the abusive language be directed to an identifiable victim.
Finally, these offenses are classified differently. Threats to do harm is a misdemeanor, while disorderly conduct is a violation or petty misdemeanor. The penalty imposed on Hernandez-Hernandez — a fine and a term of imprisonment — indicates that the city of Toppenish considers this to be a serious charge. These offenses do not contain similar elements, similar underlying conduct, or similar consequences. Therefore, the district court properly counted the conviction for threats to do harm in the defendant’s criminal history score.
V
We conclude that the 16-level enhancement does not violate Apprendi because the government does not have to charge in the indictment, present to a jury, and prove beyond a reasonable doubt that a defendant previously was deported pursuant to a felony conviction. The district court properly applied this enhancement because Hernandez-Hernandez’s prior conviction for false imprisonment qualifies as a crime of violence. We affirm the district court’s determination that Hernandez-Hernandez’s prior conviction for threats to do harm may be counted under U.S.S.G. § 4A1.2(c)(l) because it is not similar to the listed offense of disorderly conduct. While we find no Sixth Amendment violation, we grant a limited remand to allow the district court to determine “whether the sentence imposed would have been materially different had the district court known that the [federal] sentencing guidelines were advisory.” Armline, 409 F.3d at 1074.
AFFIRMED in part, REMANDED in part.

. Hernandez-Hernandez received a sentence of 90 days in jail with 87 days suspended for this misdemeanor conviction.

. The facts contained in Hernandez-Hernandez’s 995 Motion show that on September 7, 1991, Alisia Garcia and a group of female friends traveled together in a van to go to a dance club. The party consisted of Alisia, Juana, Blanca (a friend of Juana’s), Maria (Alisia's sister), Modesta, and Cleo. Shortly after arriving at the dance club, Blanca met the defendant. They danced and sat together for the majority of the evening. After leaving the dance club around 1:45 a.m., the women went to a restaurant across the street and then returned to the van to drive home. The stipulated 995 Motion further provided the following facts:
Juana was saying goodbye to her boyfriend, Cleo was saying goodbye to her boyfriend, Maria was getting into the van. At the same time, the defendant was telling Blanca that he-wanted to take her home. There was a lot of commotion. Alisia and others told the defendant that Blanca couldn’t go with him.
Defendant reportedly "got mad.” He said he was going to follow the van, but then left. The group of women then left. Juana was driving, Alisia was in the passenger seat, and the other women were in two bench seats that are against the sides of the wall of the van.
*1216 The van proceeded south on Route 101, and Alisia went back to sleep. While the van was on Route 129 headed towards Wat-sonville, Alisia was awakened by Juana saying, “Why is he following us?” Cleo was yelling at Blanca, telling her that it was her fault they had a stranger behind them.
A truck then passed them on a curve. Alisia recognized it as the same truck that the defendant had been in at the parking lot earlier. The truck stopped in front of them, at an angle preventing the van from passing on either side. The defendant then came over from the truck to the van.
He approached the van on the driver’s side and opened the door partially. Juana pulled it back, and the defendant continued to try to open it. Eventually he opened the door. During this time he was telling the group that he wanted “Martha,” which was the name that Blanca had used to identify herself to him.
Blanca told the defendant to stop trying to open the door, and to leave Juana alone. According to Alisia, the defendant was yelling that he wanted Martha (i.e., Blanca) and that he was going to take her.
He reportedly was pulling on Juana (the driver) trying to get her out of the van, but Alisia and her sister were also holding onto Juana keeping her in the van. The defendant kept saying that he wanted Martha.
According to Alisia, although Blanca had decided not to go with the defendant, she was starting to exit out the side van door. Alisia angrily told Blanca that she was not going to go, and then “hit her back into the van.” Cleo was saying "Let him take her, it's her fault we’re in this, let him take her.” Maria was holding onto Juana, and Juana was telling the defendant to let her go.
After Alisia hit or pushed Blanca back into the van the defendant reached into the vehicle. According to Alisia, he pulled some wires and some sparks came out from underneath the dash. Alisia stood up, reached over Juana, and slugged the defendant in the face.
The defendant reportedly backed away. Alisia claims that the defendant then told them he wanted all their money, and that Juana told him they didn’t have any money. Even though Alisia had seen no other person with the defendant or in or around the defendant's truck, she testified that another man somehow appeared standing next to the defendant. The defendant supposedly said, "If she moves, kill her”, and moved his right hand to the back of his body. The defendant then stepped back, and said that they had three minutes to give Martha to him. A minute or two later, the defendant got back into his truck and drove away.

. The district court noted that "[t]he facts ... don’t support any finding that this was done by any means other than through the threat of force and force. The recitation of the event by the defense and the plea to that, those findings seem to me to be judicially noticeable.”
In addition, the district court found that Hernandez-Hernandez’s 1987 conviction for violating Cal.Penal Code § 273.5 (infliction of corporal injury upon a spouse) qualified to support the enhancement.

. The parties now agree that Hernandez-Hernandez’s 1987 conviction for violating Cal.Penal Code § 273.5 cannot support the enhancement because the offense was a misdemeanor, punishable by up to one year in the county jail. See U.S.S.G. § 2L1.2(b).

. Hernandez-Hernandez pled guilty to committing the offense of false imprisonment, defined as "the unlawful violation of the personal liberty of another.” Cal.Penal Code § 236. He pled guilty to committing the offense "by violence, menace, fraud, or deceit,” making it a felony. See Cal.Penal Code § 237. The parties agree that the statute is overbroad under Taylor’s formal categorical approach. The parties further agree that if Hernandez-Hernandez committed false imprisonment by fraud or deceit, the conviction would not qualify as a predicate offense under U.S.S.G. § 2L1.2(b)(l)(A)(ii); however, if he committed the offense by force or violence, the crime of violence requirement is satisfied.

. We do not, as the dissent suggests, decide that “a written argument of law by a lawyer” is sufficient to provide the factual basis underlying a conviction. Rather, we consider the defendant's guilty plea and the factual basis of that plea when it is stipulated by the defendant. The factual basis stipulation, referring to the written brief itself, allows us to rely on the facts described by the brief.

. We note that the stipulation to the means Hernandez-Hernandez used to accomplish the false imprisonment was necessary to his plea. See Fed R. Crim. P. 11(b)(3). As a result, because Hernandez-Hernandez was convicted of committing false imprisonment by violence, menace, fraud or deceit, and the factual basis only described violent means, we can conclude that he was convicted of committing the crime through violence.

. Hernandez-Hernandez's contention that our decision in United States v. Pena, 314 F.3d 1152 (9th Cir.2003), controls this issue is unavailing. In Pena, we held that "[t]he plea colloquy failed to comply with Rule 11 because the district court never explained to [the defendant] the nature of the charges against him. Merely asking ... his attorney whether the attorney, not [the defendant], understood and agreed with the elements of the offense is insufficient.” Id. at 1156 (emphasis in original). There, we were concerned because the court failed to ask whether the defendant understood the nature of the charges; it was irrelevant whether the attorney understood them. See id. Pena does not support the theory that Hernandez-Hernandez's counsel could not agree to a stipulation of facts on his client’s behalf.

. Other circuits have interpreted § 4A1.2 as we do here. See United States v. Dixon, 230 F.3d 109, 112 (4th Cir.2000) (vacating sentence because the district court counted the suspended sentence); United States v. Johnson, 43 F.3d 1211, 1214 (8th Cir.1995) (noting that the critical inquiry is whether the *1221 sentence is "countable,” not whether it qualifies as a prior sentence); United States v. Tabaka, 982 F.2d 100, 102-03 (3d Cir.1992) (under § 4A1.2(b)(2), the district court must count the 48-hour time served that was not suspended, but it may not count the suspended part of the sentence imposed).

. Our prior decisions regarding how to determine whether a prior conviction is similar to a listed offense are not models of clarity. We have articulated at least two separate tests for determining whether a particular offense is "similar to” an offense listed in § 4A1.2(c). See Lopez-Pastrana, 244 F.3d at 1027. We believe that the "seriousness of the offense” test in its various forms is unhelpful to guide our inquiry as to whether threats to do harm is similar to disorderly conduct. See id. at 1032-34; see also United States v. Martinez (Carlos), 69 F.3d 999, 1000-01 (9th Cir. 1995).

. We look to the MPC to analyze whether disorderly conduct is similar to threats to do harm. See Lopez-Pastrana, 244 F.3d at 1028 n. 4 (explaining that if there is no federal definition of a listed offense, the district court may look to either state law or the MPC); see also Martinez (Carlos), 69 F.3d at 1001 (using the MPC’s definition of loitering); United States v. Martinez (Clyde), 905 F.2d 251, 253-54 (9th Cir.1990) (looking to the MPC because looking to the law of the jurisdiction to determine similarity would not lead to uniformity).