**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MISAEL HERNANDEZ-HERNANDEZ,
*Defendant-Appellant.*

No. 02-30429

D.C. No.
CR-02-02127-RHW

OPINION

On Remand from the United States Supreme Court

Filed December 16, 2005

Before: Andrew J. Kleinfeld, Ronald M. Gould, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman;
Partial Concurrence and Partial Dissent by Judge Kleinfeld

16511

**COUNSEL**

Rebecca L. Pennell, Federal Defenders of Eastern Washington and Idaho, Yakima, Washington, for the defendant-appellant.

Jane M. Kirk, Assistant United States Attorney, Yakima, Washington, for the plaintiff-appellee.

---

**OPINION**

TALLMAN, Circuit Judge:

Misael Hernandez-Hernandez appeals his sentence following a guilty plea conviction for illegal reentry in violation of 8 U.S.C. § 1326. He challenges a 16-level enhancement for reentry after deportation pursuant to a "crime of violence," contending that (1) the enhancement violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the government did not charge him with being an aggravated felon, and (2) his prior felony convictions do not qualify as "crimes of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). He also challenges a one-point criminal history score increase for a misdemeanor conviction for threats to do harm, contending that this prior conviction should have been excluded under U.S.S.G. § 4A1.2(c)(1). We previously affirmed Hernandez-Hernandez's conviction and sentence in *United States v. Hernandez-Hernandez*, 387 F.3d 799 (9th Cir. 2004). The Supreme Court vacated that judgment and remanded for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005). *Ramos-Birrueta v. United States*, 125 S. Ct. 1427 (2005).

We again hold that the district court properly counted the prior convictions, and so affirm all grounds on which the sentence was based. However, we grant limited remand to the

district court pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).

I

On July 23, 2002, the grand jury charged Hernandez-Hernandez with one count of illegal re-entry after deportation in violation of 8 U.S.C. § 1326. The indictment alleged that he had been deported on or about July 9, 1997, and that he was found thereafter in the United States without permission on June 30, 2002. The indictment did not allege that his deportation followed a conviction for an aggravated felony. He pled guilty to the indictment.

The presentence report ("PSR") recommended a 16-level enhancement because he previously had been deported subsequent to several aggravated felony convictions, including a 1987 California conviction for infliction of corporal injury upon a spouse, and a 1993 California conviction for two counts of false imprisonment. The PSR also recommended assessing one criminal history point for a 2002 Washington municipal court conviction for threats to do harm.[1] Hernandez-Hernandez objected to the PSR. He asserted that the convictions for infliction of corporal injury upon a spouse and for false imprisonment did not merit a 16-level enhancement, and his conviction for threats to do harm did not warrant a criminal history point because it should have been excluded under U.S.S.G. § 4A1.2(c) as being similar to the offense of disorderly conduct.

The district court denied Hernandez-Hernandez's objections. He had filed a motion to set aside the false imprisonment charges, called a "995 Motion" in California courts, before pleading guilty. During the change of plea hearing for the false imprisonment charges, defense counsel stated that

---

[1]Hernandez-Hernandez received a sentence of 90 days in jail with 87 days suspended for this misdemeanor conviction.

the parties stipulated to the contents of the 995 Motion as the factual basis for the plea.[2] In this case, the district court relied

---

[2]The facts contained in Hernandez-Hernandez's 995 Motion show that on September 7, 1991, Alisia Garcia and a group of female friends traveled together in a van to go to a dance club. The party consisted of Alisia, Juana, Blanca (a friend of Juana's), Maria (Alisia's sister), Modesta, and Cleo. Shortly after arriving at the dance club, Blanca met the defendant. They danced and sat together for the majority of the evening. After leaving the dance club around 1:45 a.m., the women went to a restaurant across the street and then returned to the van to drive home. The stipulated 995 Motion further provided the following facts:

Juana was saying goodbye to her boyfriend, Cleo was saying goodbye to her boyfriend, Maria was getting into the van. At the same time, the defendant was telling Blanca that he wanted to take her home. There was a lot of commotion. Alisia and others told the defendant that Blanca couldn't go with him.

Defendant reportedly "got mad." He said he was going to follow the van, but then left. The group of women then left. Juana was driving, Alisia was in the passenger seat, and the other women were in two bench seats that are against the sides of the wall of the van.

The van proceeded south on Route 101, and Alisia went back to sleep. While the van was on Route 129 headed towards Watsonville, Alisia was awakened by Juana saying, "Why is he following us?" Cleo was yelling at Blanca, telling her that it was her fault they had a stranger behind them.

A truck then passed them on a curve. Alisia recognized it as the same truck that the defendant had been in at the parking lot earlier. The truck stopped in front of them, at an angle preventing the van from passing on either side. The defendant then came over from the truck to the van.

He approached the van on the driver's side and opened the door partially. Juana pulled it back, and the defendant continued to try to open it. Eventually he opened the door. During this time he was telling the group that he wanted "Martha," which was the name that Blanca had used to identify herself to him.

Blanca told the defendant to stop trying to open the door, and to leave Juana alone. According to Alisia, the defendant was yelling that he wanted Martha (i.e., Blanca) and that he was going to take her.

on that stipulated factual basis to find that the false imprison-
ment conviction supported the 16-level enhancement. The
court found that Hernandez-Hernandez clearly committed the
crimes underlying the conviction through the use of force or
violence.[3] The district court assessed one point for his convic-
tion for threats to do harm because it found that the offense
"is more like harassment than it is [like] disorderly conduct."

---

He reportedly was pulling on Juana (the driver) trying to get
her out of the van, but Alisia and her sister were also holding
onto Juana keeping her in the van. The defendant kept saying that
he wanted Martha.

According to Alisia, although Blanca had decided not to go
with the defendant, she was starting to exit out the side van door.
Alisia angrily told Blanca that she was not going to go, and then
"hit her back into the van." Cleo was saying "Let him take her,
it's her fault we're in this, let him take her." Maria was holding
onto Juana, and Juana was telling the defendant to let her go.

After Alisia hit or pushed Blanca back into the van the defen-
dant reached into the vehicle. According to Alisia, he pulled
some wires and some sparks came out from underneath the dash.
Alisia stood up, reached over Juana, and slugged the defendant
in the face.

The defendant reportedly backed away. Alisia claims that the
defendant then told them he wanted all their money, and that
Juana told him they didn't have any money. Even though Alisia
had seen no other person with the defendant or in or around the
defendant's truck, she testified that another man somehow
appeared standing next to the defendant. The defendant suppos-
edly said, "If she moves, kill her", and moved his right hand to
the back of his body. The defendant then stepped back, and said
that they had three minutes to give Martha to him. A minute or
two later, the defendant got back into his truck and drove away.

[3]The district court noted that "[t]he facts . . . don't support any finding
that this was done by any means other than through the threat of force and
force. The recitation of the event by the defense and the plea to that, those
findings seem to me to be judicially noticeable."

In addition, the district court found that Hernandez-Hernandez's 1987
conviction for violating Cal. Penal Code § 273.5 (infliction of corporal
injury upon a spouse) qualified to support the enhancement.

The resulting calculation placed Hernandez-Hernandez in Criminal History Category IV with an adjusted Offense Level of 21, producing a sentencing range of 57-71 months. The district court sentenced him to 65 months of imprisonment.

## II

Hernandez-Hernandez contends that the district court improperly enhanced his sentence for prior aggravated felony convictions that the government did not charge in the indictment, submit to a jury, and prove beyond a reasonable doubt. This argument is foreclosed by our decision in *United States v. Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2000) (construing *Apprendi* to mean that the government is not required "to include [an alien's] prior aggravated felony convictions in the indictment, submit them to a jury, or prove them beyond a reasonable doubt"), and *United States v. Quintana-Quintana*, 383 F.3d 1052, 1052-53 (9th Cir. 2004).

## III

Hernandez-Hernandez challenges the district court's imposition of the 16-level enhancement, contending that he has not been convicted of a prior felony "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). He argues that the district court's reliance on the stipulated 995 Motion to determine whether the false imprisonment conviction constitutes a "crime of violence" violates the prohibition set forth in *Taylor v. United States*, 495 U.S. 575, 601-02 (1990), that sentencing courts may not inquire into the facts underlying a prior conviction to determine whether it counts as a predicate offense. We review de novo a district court's determination that a prior conviction merits an enhancement to the base offense level. *United States v. Rivera-Sanchez*, 247 F.3d 905, 907 (9th Cir. 2001) (en banc).[4]

---

[4]The parties now agree that Hernandez-Hernandez's 1987 conviction for violating Cal. Penal Code § 273.5 cannot support the enhancement because the offense was a misdemeanor, punishable by up to one year in the county jail. *See* U.S.S.G. § 2L1.2(b).

**[1]** Hernandez-Hernandez is subject to a 16-level increase in his base offense level if he previously was deported pursuant to a felony conviction for a crime of violence, defined as "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2(b)(1)(A)(ii), cmt. n. 1B(iii). *Taylor* applies to the predicate offense determination under § 2L1.2. *United States v. Pimentel-Flores*, 339 F.3d 959, 967-68 (9th Cir. 2003).

**[2]** The California false imprisonment statute reaches both conduct that constitutes a crime of violence and conduct that does not; therefore, we use the modified categorical approach to examine "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes[,] such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." *Rivera-Sanchez*, 247 F.3d at 908 (alteration in original) (quoting *United States v. Casarez-Bravo*, 181 F.3d 1074, 1077 (9th Cir. 1999)); *see United States v. Hernandez-Castellanos*, 287 F.3d 876, 881 (9th Cir. 2002).[5]

**[3]** We must decide whether the district court properly followed the modified categorical approach when it relied on the facts contained in the stipulated 995 Motion to determine that Hernandez-Hernandez committed the offense of false imprisonment through the use of violence. We allow sentencing

---

[5]Hernandez-Hernandez pled guilty to committing the offense of false imprisonment, defined as "the unlawful violation of the personal liberty of another." Cal. Penal Code § 236. He pled guilty to committing the offense "by violence, menace, fraud, or deceit," making it a felony. *See* Cal. Penal Code § 237. The parties agree that the statute is overbroad under *Taylor's* formal categorical approach. The parties further agree that if Hernandez-Hernandez committed false imprisonment by fraud or deceit, the conviction would not qualify as a predicate offense under U.S.S.G. § 2L1.2(b)(1)(A)(ii); however, if he committed the offense by force or violence, the crime of violence requirement is satisfied.

courts to consider signed plea agreements and plea transcripts in conjunction with other documents when making this determination. *See United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1248 (9th Cir. 2003) (allowing the district court to rely on the indictment, plea agreement, minutes from the change of plea hearing, and judgment); *United States v. Bonat,* 106 F.3d 1472, 1476-77 (9th Cir. 1997) (allowing the district court to consider the information, sentence of imprisonment, and the plea transcript); *United States v. Sweeten*, 933 F.2d 765, 768-70 (9th Cir. 1991) (allowing the district court to consider the indictment, signed plea agreement, and judgment). The Supreme Court has confirmed that in plea cases, the court may rely upon "the statement of factual basis for the charge," required under Federal Rule of Criminal Procedure 11(a)(3), as "shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." *United States v. Shepard*, 125 S. Ct. 1254, 1259-60 (2005).

[4] In the stipulated 995 Motion,[6] Hernandez-Hernandez admitted to a particular set of facts that clearly involve violence and the use of force. He positioned his truck to block the path of his victims' van, attempted to pry open the van's door, grabbed one of the victims and attempted to extract her forcibly from the van, and then yanked the wires under the dashboard to disable the victims' vehicle. Finally, he threatened to kill the occupants if they refused to turn over one of the women in the van. This stipulation does not describe activities of fraud or deceit; it describes acts of violence. The conclusion is inescapable that, by stipulating to this testimony

---

[6]We do not, as the dissent suggests, decide that "a written argument of law by a lawyer" is sufficient to provide the factual basis underlying a conviction. Rather, we consider the defendant's guilty plea and the factual basis of that plea when it is stipulated by the defendant. The factual basis stipulation, referring to the written brief itself, allows us to rely on the facts described by the brief.

as the factual basis for his guilty plea, Hernandez-Hernandez necessarily was convicted of a crime committed by violent means, and not by the other methods set forth in the charging document and statute.

**[5]** We see no appreciable difference between allowing the district court to rely on the stipulated 995 Motion which served as the factual basis for the plea and allowing prior sentencing courts to rely on a plea agreement or the transcript of a plea colloquy. Indeed, this document serves as the "findings of fact adopted by the defendant upon entering the plea," which is part of the judicial record on which the Supreme Court agrees later courts may rely. *See id.* at 1260. Congress did not intend to require sentencing courts to engage in "an elaborate factfinding process regarding the defendant's prior offenses." *Taylor*, 495 U.S. at 601. Here, because Hernandez-Hernandez stipulated to a document which served as the factual basis for his guilty plea, the sentencing court was not required to engage in any further factfinding endeavor.[7] The court did no more than we have allowed in our prior cases; it relied on readily available facts expressly stipulated by both sides and clearly fitting within the statutory definition of a crime of violence. The district court did not violate *Taylor*.

Our colleague in dissent criticizes the district court's reliance on the stipulation. The dissent argues that the defense counsel's stipulation in open court to the 995 Motion does not demonstrate that Hernandez-Hernandez necessarily admitted to all the facts in the 995 Motion. Dissent op. 16534-35. The dissent notes that "[a]t his change of plea hearing, Hernandez[-Hernandez] never personally acknowledged the

---

[7]We note that the stipulation to the means Hernandez-Hernandez used to accomplish the false imprisonment was necessary to his plea. *See* FED. R. CRIM. P. 11(b)(3). As a result, because Hernandez-Hernandez was convicted of committing false imprisonment by violence, menace, fraud or deceit, and the factual basis only described violent means, we can conclude that he was convicted of committing the crime through violence.

truth of the allegations set out in footnote 2 . . . . The judge never personally addressed him to ask whether those things were true. Nor did the judge ask him what he had done." *Id.* at 16533. Relying on the fact that "Hernandez[-Hernandez] never acknowledged that he agreed that these facts had taken place, or even that he had ever seen his lawyer's motion papers," the dissent concludes that the exchange between the attorneys and the court which resulted in the stipulation does not "unequivocally establish[ ]" these facts as required for the modified categorical approach. *Id.* at 16534.

**[6]** There is no authority to support the proposition that when Hernandez-Hernandez's attorney stipulated to the factual basis supporting the plea agreement the defendant was not bound by the facts contained in that stipulation. In fact, we have repeatedly held that criminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority. *See United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980) (holding that "when a stipulation to a crucial fact is entered into the record in open court in the presence of the defendant, and is agreed to by defendant's acknowledged counsel, the trial court may reasonably assume that the defendant is aware of the content of the stipulation and agrees to it through his or her attorney"); *see also United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (finding that defendant was bound by his attorney's admission during closing argument); *Rodriguez-Gonzalez v. INS*, 640 F.2d 1139, 1141-42 (9th Cir. 1981) (holding that attorney's admission to an element of the offense in the petitioners' presence at a deportation hearing was binding on the petitioners).[8]

---

[8]Hernandez-Hernandez's contention that our decision in *United States v. Pena*, 314 F.3d 1152 (9th Cir. 2003), controls this issue is unavailing. In *Pena*, we held that "[t]he plea colloquy failed to comply with Rule 11 because the district court never explained to [the defendant] the nature of the charges against him. Merely asking . . . his attorney whether the attorney, *not* [the defendant], understood and agreed with the elements of the offense is insufficient." *Id.* at 1156 (emphasis in original). There, we were

Consistent with this approach, we have recently approved of reliance on the prosecutor's statement of the factual basis of the charge where defense counsel did not object to the factual statement. *See United States v. Smith*, 390 F.3d 661, 666 (9th Cir. 2004), *as amended by* 405 F.3d 726 (9th Cir. 2005) (concluding that the defendant conceded the facts through his counsel). The *Smith* court held that "the district court may rely on the undisputed factual basis as stated at the plea hearing to support" a sentencing enhancement. *See id*. at 665-66 (citing *United States v. Palmer*, 68 F.3d 52, 53 (2d Cir. 1995)). In the case at bar, the district court's reliance on the 995 Motion is equally appropriate; the defense counsel expressly stipulated to the factual basis of the plea and that is sufficient to constitute "findings of fact adopted by the defendant." *Shepard*, 125 S. Ct. at 1260.

**[7]** The purpose of the *Taylor* approach is "to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime, even if the statute defining the crime is overly inclusive." *Hernandez-Valdovinos*, 352 F.3d at 1247 (quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc)). The district court did exactly as we have instructed. It looked to the statute of conviction and to judicially noticeable facts, the stipulated factual basis, which "unequivocally establish[ ]" that Hernandez-Hernandez's prior conviction involved the use of force and violence. The district court properly imposed a 16-level enhancement for a prior aggravated felony conviction.

IV

Hernandez-Hernandez challenges the inclusion of one point in his criminal history score, contending that his 2002 convic-

concerned because the court failed to ask whether the defendant understood the nature of the charges; it was irrelevant whether the attorney understood them. *See id. Pena* does not support the theory that Hernandez-Hernandez's counsel could not agree to a stipulation of facts on his client's behalf.

tion for threats to do harm, a municipal misdemeanor conviction, should have been excluded under U.S.S.G. § 4A1.2(c)(1). We review de novo a district court's inclusion of a prior conviction for criminal history purposes. *United States v. Lopez-Pastrana*, 244 F.3d 1025, 1027 (9th Cir. 2001).

Prior sentences for misdemeanors are generally included in a defendant's criminal history score, subject to certain exceptions:

> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense [illegal reentry]:
>
> . . .
>
> Disorderly Conduct
>
> . . .

U.S.S.G. § 4A1.2(c). We must decide whether Hernandez-Hernandez's prior misdemeanor sentence was a term of imprisonment of at least thirty days, and whether the conviction for "threats to do harm" is similar to "disorderly conduct." The conviction for threats to do harm may not be counted under subsection (B) because a conviction for threats to do harm is not similar to the instant offense of illegal reentry.

### A

**[8]** Section 4A1.2(c)(1)(A) of the Sentencing Guidelines instructs that a sentence may be counted only if the sentence

was for a term of imprisonment of at least thirty days. A "sentence of imprisonment" is defined as a sentence of incarceration and refers to the maximum sentence imposed, rather than the time actually served. § 4A1.2(b)(1). If part of the sentence of imprisonment is suspended, "sentence of imprisonment" refers "only to the portion that was not suspended." § 4A1.2(b)(2). Hernandez-Hernandez received a 90-day sentence, with 87 days suspended for this misdemeanor conviction. The sentence imposed for his conviction for threats to do harm does not count as a prior sentence under § 4A1.2(c)(1)(A) because his sentence was for only three days. *See* § 4A1.2(b)(2).

**[9]** We recognize that this result may appear to be at odds with prior precedent. *See United States v. Williams*, 291 F.3d 1180, 1195 (9th Cir. 2002) (finding that the defendant's six-month suspended sentence must be counted as a prior sentence despite the exclusion in § 4A1.2(c)(1)). *Williams* is distinguishable because that defendant's sentence was "totally suspended" and § 4A1.2(b)(2) did not apply. *Id.* Where, as here, the sentence was partially suspended, § 4A1.2(b)(2) prevents the three-day "sentence of imprisonment" from counting as a prior sentence.[9]

## B

**[10]** Our determination that Hernandez-Hernandez's prior sentence did not exceed thirty days does not end our inquiry.

---

[9]Other circuits have interpreted § 4A1.2 as we do here. *See United States v. Dixon*, 230 F.3d 109, 112 (4th Cir. 2000) (vacating sentence because the district court counted the suspended sentence); *United States v. Johnson*, 43 F.3d 1211, 1214 (8th Cir. 1995) (noting that the critical inquiry is whether the sentence is "countable," not whether it qualifies as a prior sentence); *United States v. Tabaka*, 982 F.2d 100, 102-03 (3d Cir. 1992) (under § 4A1.2(b)(2), the district court must count the 48-hour time served that was not suspended, but it may not count the suspended part of the sentence imposed).

We must next ask whether his conviction for threats to do harm is similar to the listed offense of disorderly conduct.[10]

Under the "conduct" test, Hernandez-Hernandez's prior conviction is similar to the listed offense if the elements of the municipal threats to do harm ordinance are similar to the elements necessary to prove the listed offense of disorderly conduct. *See Lopez-Pastrana*, 244 F.3d at 1027; *Martinez (Carlos)*, 69 F.3d at 1000-01.

The Toppenish, Washington, city ordinance reads:

> It is unlawful for any person to communicate, directly or indirectly, the intent to cause bodily injury to another person or the intent to cause physical damage to the property of another. Every person convicted of a violation of the provision of this section shall be guilty of threats to do harm, a misdemeanor.

Toppenish Mun. Code § 9.06.020.

In contrast, the Model Penal Code ("MPC")[11] defines disorderly conduct as:

---

[10]Our prior decisions regarding how to determine whether a prior conviction is similar to a listed offense are not models of clarity. We have articulated at least two separate tests for determining whether a particular offense is "similar to" an offense listed in § 4A1.2(c). *See Lopez-Pastrana*, 244 F.3d at 1027. We believe that the "seriousness of the offense" test in its various forms is unhelpful to guide our inquiry as to whether threats to do harm is similar to disorderly conduct. *See id.* at 1032-34; *see also United States v. Martinez (Carlos)*, 69 F.3d 999, 1000-01 (9th Cir. 1995).

[11]We look to the MPC to analyze whether disorderly conduct is similar to threats to do harm. *See Lopez-Pastrana*, 244 F.3d at 1028 n.4 (explaining that if there is no federal definition of a listed offense, the district court may look to either state law or the MPC); *see also Martinez (Carlos)*, 69 F.3d at 1001 (using the MPC's definition of loitering); *United States v. Martinez (Clyde)*, 905 F.2d 251, 253-54 (9th Cir. 1990) (looking to the MPC because looking to the law of the jurisdiction to determine similarity would not lead to uniformity).

(1) Offense Defined. A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

> (a) engages in fighting or threatening, or in violent or tumultuous behavior; or

> (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or

> (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

"Public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood.

(2) Grading. An offense under this section is a petty misdemeanor if the actor's purpose is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

Model Penal Code § 250.2.

**[11]** Threats to do harm and disorderly conduct do not contain the same elements or the same underlying conduct. To be guilty of threats to do harm, a person must communicate his intent to cause bodily injury to another person or the intent to cause physical damage to another's property. In contrast, dis-

orderly conduct requires that a person, with the purpose of causing a public inconvenience, annoyance, or alarm, simply engage in fighting or use abusive language. Although they both penalize the use of abusive language, the offense of threats to do harm requires that the threats communicated contain a specific intent to cause bodily injury or physical damage. Thus, the conduct is directed at a particular victim or object, showing a willingness to harm that victim. In contrast, disorderly conduct is essentially an unfocused crime; there is no requirement that the abusive language be directed to an identifiable victim.

**[12]** Finally, these offenses are classified differently. Threats to do harm is a misdemeanor, while disorderly conduct is a violation or petty misdemeanor. The penalty imposed on Hernandez-Hernandez — a fine and a term of imprisonment — indicates that the city of Toppenish considers this to be a serious charge. These offenses do not contain similar elements, similar underlying conduct, or similar consequences. Therefore, the district court properly counted the conviction for threats to do harm in the defendant's criminal history score.

V

**[13]** We conclude that the 16-level enhancement does not violate *Apprendi* because the government does not have to charge in the indictment, present to a jury, and prove beyond a reasonable doubt that a defendant previously was deported pursuant to a felony conviction. The district court properly applied this enhancement because Hernandez-Hernandez's prior conviction for false imprisonment qualifies as a crime of violence. We affirm the district court's determination that Hernandez-Hernandez's prior conviction for threats to do harm may be counted under U.S.S.G. § 4A1.2(c)(1) because it is not similar to the listed offense of disorderly conduct. While we find no Sixth Amendment violation, we grant a limited remand to allow the district court to determine "whether

the sentence imposed would have been materially different had the district court known that the [federal] sentencing guidelines were advisory." *Ameline*, 409 F.3d at 1074.

**AFFIRMED in part, REMANDED in part.**

---

KLEINFELD, Circuit Judge, concurring in part and dissenting in part:

I concur in all of Judge Tallman's thoughtful majority opinion except for that portion of the analysis that applies the "modified categorical approach" to Hernandez's prior conviction, resulting in a 16-level increase in Hernandez's offense level. As to that part only, I respectfully dissent. The majority opinion, in my view, misreads the recent Supreme Court decision *Shepard v. United States*.[1]

Although I suspect that Hernandez's prior crime (the van incident described in the majority's footnote 2) deserves a 16-level enhancement, I cannot agree with the majority's analysis that it was legally permissible to give him one in this case. My objection to the majority opinion on this point is that it expands the modified categorical approach to the point where it is no longer categorical at all.

In *Taylor v. United States,* the Supreme Court expressed its approval of what was then the uniform approach of the circuit courts for determining whether prior crimes qualified as aggravators under 18 U.S.C. § 924(e).[2] The Court approved of the circuit courts' view that "§ 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying

---

[1] *Shepard v. United States*, 125 S. Ct. 1254 (2005).
[2] *Taylor v. United States,* 495 U.S. 575, 600 (1990).

those convictions."[3] The Court was impressed with the "practical difficulties and potential unfairness" if in every case where an enhancement was sought "the trial court would have to determine what the conduct was" behind the prior convictions.[4] The Court held that the enhancement statute "generally requires the trial court to look only to the fact of conviction and to the statutory definition of the prior offense."[5] If that were enough to find that the prior crime fell within the federal definition triggering the enhancement, then an enhancement would be proper. But if the statutory definition of the prior offense were broader than the federal category, then an enhancement would not be proper. That is the "categorical approach." While the Court was speaking specifically to 18 U.S.C. § 924(e), we and our sister circuits have taken the reasoning to apply generally to prior offenses used as aggravators for sentencing purposes.[6]

What we call the "modified categorical approach" comes from subsequent language in *Taylor* slightly qualifying the strict categorical approach. The Court wrote that "[t]his categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary" (burglary was the particular enhancement crime in *Taylor*).[7] Because Hernandez pleaded guilty to his prior crime, such a jury verdict was, of course, unavailable in the case at bar. We have, however, further extended this narrow exception to cases involving guilty pleas. Our en banc decision in *United States v. Corona-Sanchez* holds that "if a defendant enters a guilty plea, the sentencing court may consider the charging documents in

---

[3]*Id.*

[4]*Id.* at 601.

[5]*Id.* at 602.

[6]*See, e.g., United States v. Corona-Sanchez,* 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc).

[7]*Taylor,* 495 U.S. at 602.

conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime."[8] But we also held that the charging papers and the presentence report are not themselves cognizable without something more to establish the facts of the prior offense, such as a signed plea agreement.[9] The idea is to make sure that the record "unequivocally establishes" the facts necessary to conclude that the prior crime fell within the definition of the relevant aggravator.[10]

In the case at bar, the "facts" of the prior crime are set out in footnote 2 of the majority opinion. This account came not from any of the sources — e.g., "the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment"[11] — that we have already held are cognizable under the modified categorical approach. The source was a memorandum of law from the earlier case filed by counsel along with a motion under California Penal Code § 995.

In section 995 of its penal code, California has codified the practice of moving to dismiss informations and indictments before trial for such defects as failure to allege commission of a crime.[12] Hernandez was charged by information for his prior offense, along with other offenses dismissed after the motion as part of the plea bargain. Under section 995, the state superior court is required to set aside an information upon the

---

[8]*Corona-Sanchez,* 291 F.3d at 1211.

[9]*Id.*

[10]*Id.; see also United States v. Belless,* 338 F.3d 1063, 1068-69 (9th Cir. 2003) ("[T]he record does not reveal the conduct to which he pleaded and for which he was convicted. Accordingly, we cannot conclude that the trier of fact, the Wyoming judge in this case, necessarily found Belless guilty of conduct that, under a modified categorical approach, serves as a predicate offense.").

[11]*Corona-Sanchez,* 291 F.3d at 1211.

[12]*Cf.* FED. R. CRIM. P. 12.

defendant's motion if the defendant was committed without reasonable or probable cause. Thus, Hernandez's lawyer in the earlier case filed a "995 motion," arguing that even if Hernandez did what he was alleged to have done, it nevertheless did not amount to reasonable or probable cause for the offenses for which he was charged in the information. The 995 motion was a written argument of law by a lawyer. It was not signed by Hernandez, and the "facts" it recited were not verified by Hernandez. Defense counsel's memorandum in support of the motion says that the only testimony considered at the preliminary hearing was that of one of the women in the van. The memorandum then proceeds to set out what she testified to at the preliminary hearing. Defense counsel's summary of that testimony by a passenger in the van is what the majority sets out in footnote 2 as the facts of Hernandez's prior crime. But those "facts" were written by defense counsel not for the purpose of saying "this is what happened." Rather, the point was to say that "even if all this happened as the witness said, it still would not constitute the crimes charged in the information."

Hernandez entered into a plea bargain, and some of the charges were dismissed. At his change of plea hearing, Hernandez never personally acknowledged the truth of the allegations set out in footnote 2 of the majority's opinion. The judge never personally addressed him to ask whether those things were true. Nor did the judge ask him what he had done. Instead, after the lengthy litany to assure that Hernandez knew of all his rights and that the plea was a knowing and voluntary waiver of them, the judge asked Hernandez's *lawyer* if the factual basis for the plea was as set out in the "995 motion." The prosecutor and defense counsel so stipulated. Here is the exchange:

> **The Court**: Are you willing to waive all those [trial] rights in this proceeding?
>
> **The Defendant [Hernandez]**: Yes.

**The Court**: All right. Factual basis stipulated 995 motion?

**Ms. de la Pena [Hernandez's Attorney]**: Stipulated.

**Mr. Morgan [Prosecutor]**: Stipulated.

There are two reasons that this exchange does not, as we said in *Corona-Sanchez,* "unequivocally establish[ ]" the facts. First, Hernandez never acknowledged that he agreed that these facts had taken place, that he had ever seen his lawyer's motion papers, or that he understood the terse exchange. Second, the terse exchange does not say whether the prosecutor and defense counsel are stipulating that everything in the 995 motion is a true account of what happened, or merely that the court may determine whether there is a factual basis for the plea based on the witness's testimony. A "factual basis" sometimes consists of a defendant's admission of what he did, but sometimes does not, as when the prosecutor states what he thinks he could prove, and defense counsel stipulates that the prosecutor could put on persuasive evidence to this effect. Defense counsel may have been saying, in effect, "my client is not ready personally to say this is what he did, but he is prepared to plead guilty because the prosecutor will be able to put on evidence that this is what he did."

For purposes of the section 995 motion, no one had to prove that the facts as set out were true. Nor did anyone have to prove that they were true for purposes of Hernandez's plea. Those facts have never been proved true nor have they ever been admitted to be true, by Hernandez or his attorney. Hernandez never admitted that what the single witness said was what actually happened. There was not any reason for him to do so — he was not asked, and he had a good plea bargain. A stipulation to a factual basis is not the same thing as a stipulation that the defendant agrees to those facts. Under California law, showing a factual basis "does not require more than

establishing a prima facie factual basis for the charges . . . [N]or does the trial court have to be convinced of defendant's guilt."[13] Even though Hernandez was bound by his attorney's stipulation that the victim's testimony at the preliminary hearing, as summarized in the 995 motion, furnished a factual basis for his change of plea, that is not the same thing as Hernandez or his lawyer admitting that all the facts in the testimony were true.

The majority correctly points out that *Taylor's* prohibition against looking to the facts underlying a prior crime is to prevent sentencing courts from engaging in "elaborate factfinding process regarding the defendant's prior offenses."[14] But that is just what will happen as a result of today's novel expansion of what is cognizable evidence of the details of a prior offense. Lawyers tend to be intelligent advocates for their clients. Now that such evidence from the prior case as lawyers' memoranda and prosecution testimony in preliminary hearings can come in, prosecutors and defense attorneys will comb through these materials and litigate their significance during sentencing for subsequent crimes, perhaps many years later. This is a very time consuming way to go about sentencing. Worse, much worse, it is a highly unreliable way to find out what the defendants did at earlier times. It is difficult indeed to establish true histories of the crimes charged. Establishing the histories of earlier crimes, often crimes far in the past, is a task that in many cases is impossible to perform with reasonable accuracy. That is why we should use a categorical approach except in a "narrow range of cases," as *Taylor* requires.[15] That is why the evidence of what happened should be "unequivocal," as *Corona-Sanchez* requires.[16] Our

---

[13]*People v. Holmes,* 84 P.3d 366, 372 (Cal. 2004).

[14]Majority Op. at 16522.

[15]*Taylor,* 495 U.S. at 602.

[16]*Corona-Sanchez,* 291 F.3d at 1211. *United States v. Smith*, 390 F.3d 661 (9th Cir.), *as amended by* 405 F.3d 726 (9th Cir. 2005), upon which

decision today goes much too far toward vitiating the categorical approach, in favor of a particularized historical approach that relies on whatever scraps of historical evidence turn up.

The majority opinion reads *Shepard v. United States*[17] as though it liberalized the categorical approach imposed by *Taylor v. United States*.[18] *Shepard* did the opposite. It rejected the governments "call to ease away" from the "the heart" of *Taylor*, restricting the categorical approach to "records of the convicting court approaching the certainty of the record of conviction in a generic crime state,"[19] and said that if there were to be any easing of the categorical approach, Congress would have to do it. *Shepard* twice emphasized in its statement of its holding that to establish a fact narrowing a nongeneric statement, the colloquy and confirmation of the narrowing fact must be "by the defendant":

> We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of *colloquy between judge and defendant* in which the factual basis for the plea was confirmed

---

the majority relies, itself relies on our previous decision, which was vacated by the Supreme Court, in the case at bar. *Smith* is also factually distinguishable because the transcript of the earlier proceeding, in that case, left no doubt as to the facts, and no doubt that the defendant could understand what the lawyers were talking about. By contrast, here all we have is the judge's cryptic reference to the "995," not any description of the facts. There is nothing "unequivocal" here that shows that the defendant knew what the judge and the lawyers were talking about. In *Smith*, the lawyers described the facts in English. In this case, they used a number to allude to a document filed at another time.

[17]*Shepard*, 125 S. Ct. 1254.

[18]*Taylor*, 495 U.S. 575 (1990).

[19]*Shepard*, 125 S. Ct. at 1254.

*by the defendant*, or to some comparable judicial record of this information.[20]

What the district judge knew in this case is that defense counsel in the previous case had tersely stipulated that the witness statement furnished a sufficient factual basis for the plea, not the same thing at all as a "colloquy between judge and defendant" in which what the witness said was "confirmed by the defendant." I respectfully suggest that the majority has misread *Shepard* as though it had expanded what *Taylor* allows, in the face of *Shepard*'s plain statement about *Taylor*'s narrow categorical approach that there was no "sufficient justification for upsetting precedent."[21]

---

[20]*Id*. at 1263.
[21]*Id*. at 1261.